Code 13 19-0092 Markkel Insurance Comp. v. Energym Gymnastics Please step up and identify yourselves. Good morning, Your Honors. Matthew Sorum on behalf of Appalachian Markkel Insurance Comp. Good morning, Your Honors. Jack Lehan on behalf of Energym Gymnastics and Andrew Morreale. Is he at all? Say it again. Lehan, and I represent Energym. Oh, okay. We know our rules, 15-15. Right. And if we ask a lot of questions, we'll give you some leeway. And I'm losing my voice. It sounds like you've got something going on there. Yeah. If I could ask for five minutes from the bottom. Fine. I'll be ready whenever you're ready. I'm ready. Okay, please report. The case that... One thing, realize that you've got to show that there's an actual anticipatory breach. Well, here's what I think I need to show you. And the anticipatory breach is that January 20, 2017 letter. The legal question for the purposes of insurance law is whether or not this constitutes a breach of the duty to defend right out from the get-go. And the reason I say it does is because it is not a reservation of rights letter any more than an SUV is a pickup truck. It's similar. It's built on the same frame. There's language in this January 20, 2017 letter that's similar to a reservation of rights letter. But unlike a reservation of rights letter, the January 20, 2017 letter says we must disclaim coverage. Not me. It doesn't reserve anything. It says we will not be handling this case. We're not going to defend you. You're out of luck. We're relying on our position before we even know whether a suit has been filed against you, which is exactly contrary to Illinois law. Illinois law says the duty to defend is determined when you have a complaint that's tendered for a defense and it's compared to the allegations of the insurance policy under which a defense is sought. Have you read the case of Poe v. Economic Fire Engagement? Neither of you cited it. But I point out in that case, basically in looking for the executive, we are unable to indemnify or provide a defense for her in this matter because the injury to plaintiff was due to an alleged exposure to paint, which is excluded from coverage under the policy. And then they go on and say, and the insurer was not served with a lawsuit until 26 days after. And then they go on to say you'll have to establish a repudiation of the contract and if any damages were incurred, and you have to show that there was potential for coverage existed if the contract had been repudiated. It's the language of the policy. Let me address that then. In this case, they said there's insufficient to show an anticipatory breach. And it's almost the exact same facts as your case. I'm not familiar with that case. I did not come across it in my research. I admit that. Neither did I. But I would say that the reason for my digging my heels in a little bit on this is the fact is that the law is very clear. Whether Pope is correctly decided or not, I don't know. That must be an appellate court case. Is it downstate somewhere? It's the third district. Okay. The point is that the Supreme Court, which controls all of our decisions, the Elko case is, I think, controlling in this case. An insurer's duty to defend under a liability policy is so fundamental, according to Elko, that a breach of that duty constitutes a repudiation of the contract. It says so plain language, cited page 23 of our brief. Once the insurer breaches its duty to defend, and this is, again, Elko, the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses, even if they might otherwise have been successful, because that's what Elko provides. So if Pope says something different than that. They cite Elko, and they cite for the exact same opposite reason you're saying. Well, I'm reading Elko. I can read what the language is, and the language is pretty clear, I think. And while with great respect to the third district case, which I've not read, I know what this policy, you know, what this letter says. This letter is the first legal issue that has to be addressed here, and the letter says we're not going to defend you no way, no how. We don't care what suit is filed against you. We're going to dig our heels in on this. That's just the first issue. If you get past that, if you find that there is no repudiation there, which I think is impossible, but if the court finds based on Pope, which I think is misreading Elko, and I'm buoyed by what you're telling me, because I'm giving you the operative language of Elko in my brief, pages 23, pages 25. I think that's. So the point is that if you get past that, then you have to get to what the actual policy provides. And unfortunately for Markell, in this case, whether it was an underwriting error or whether it was an attempt at overkill or something, Markell put two different exclusions in its policy covering the exact same subject matter. This is not like the general versus specific cases that they tried to invoke and apparently had some success with the trial court on, the Pope Brothers case and the other cases that we cite in our brief. This is not only the exact same subject matter, they're next to each other in the policy. Markell only relied on one of those provisions, not the other exclusion, ignored it completely until the very end of the case in the judgment on the pleading stage. They quote it in the opening provision of their brief here, but that's a lot too late. The problem is that when you have two different exclusions covering the exact same subject matter, the law says that you have to harmonize them, you have to read them together in a way that doesn't render either one of them surplusage. And what Markell has come up with is a very plausible reading of the exclusion that it relies on, what it calls the youth-related organizations exclusion. But it doesn't harmonize it with the other, held by sexual abuse or sexual molestation exclusion. It says, oh, well, one is general and one is specific, and the specific, and that part of the statement is true, a specific policy provision controls over a general provision. But when you look at the case law which addresses what is a specific provision and what is a general provision like in the Polk Brothers case, Continental Insurance versus Polk Brothers and the other cases we cite in the brief, you see the difference between those kinds of construction and these two exclusions which deal with the exact same subject matter and the exact same portion of the policy. It's not like in one case it was an uninsured motorist provision and a liability coverage provision. In one case it was a, you know, so we don't, we're dealing with the exact same area here. So even if you get past the first part, whether that January 20, 2017 letter constitutes an anticipatory repudiation, which I think it pretty clearly does. Whether the Polk Court would have found that the same thing, I don't know. But I'm not asking the Polk Court to rule here. I'm asking this Court to rule. And this Court is not constrained by the Polk Court. It is, however, constrained by ELCA. If you get past that, you still have to get to the endorsements themselves. And that's, I think, where we have a problem in this case, where perhaps the trial court may have gone astray and where I think counsel goes astray in his brief. He wants to get right into the exclusions. I think we have, like in high school math, sometimes we have to do the order of operations. If we focus on one portion without going through the proper steps, we don't reach the proper result. The first thing we have to do is, is this letter an anticipatory repudiation? It says we're not going to cover you no matter what. Even though there is no complaint tended for a defense, even though it says we don't know of any complaint and the case law is abundantly clear that the duty to defend does not even arise until you have a complaint tended for a defense so that you can compare the allegations of one to the other. So that's the first thing that must be done. Let me say that. Counsel, what about the fact that the letter specifically says, in the event that you receive notice that a suit has been filed, please forward the suit and any additional information to our attention as soon as possible so that we can evaluate the specific allegations under the policy? That's the pickup truck frame that the SUV is built on. That language is typical in a reservation of rights letter, and it would have been fine for a reservation of rights letter if it had not had this other language grafted onto it. A reservation of rights letter, there's nothing magic about it. It's just a matter of giving, and sometimes it can be very helpful to parties in an insurance dispute, giving them the opportunity to see whether or not there may be a problem with coverage down the road. It may encourage settlement. It may encourage negotiation at an early stage. But in a case like typically, as the court is well aware, the case law says that an insurance company that picks up a defense without issuing a reservation of rights letter explaining where the problems may be, where the pitfalls may be with coverage, will have forfeited or waived the opportunity to raise those defenses. We have the same, that's one use of the communication. Can we also be construed as we'll reevaluate our position depending upon what, if anything, is filed? With respect to the author of this letter, there's nothing in here that suggests any indication of a willingness to reevaluate. We are not going to pay anything. We will not be handling any claim that may arise. We will not be handling any claim that may arise. So send us anything you want because that's the language we put in every letter. I'm sure in a few minutes we're going to hear the other side. Well, I don't think there is another side to that one. I'm pretty comfortable with that. For the reason that what can you say that says, oh, well, never mind. A reservation of rights letter, if it were proper, would not say these things. A reservation of rights letter, if it were proper, would say we may have a problem. We might have a coverage defense here. Here's what we think our coverage defenses are. Send your complaint in if it comes in and we will evaluate against that and discharge our duty to defend in accordance with Illinois law. That's not what happened here. So. Sounds like you need someone like you working over there. Well, you know, I used to work on that side of the street, and that's one of the things that, you know, we had to deal with as a regular feature was, you know, write those kinds of letters for insurance companies. I think here I don't think they had the advice. I know they didn't have the advice of counsel because counsel wasn't involved in the case at that stage. The parties you represented obviously signed a contract that was, in my estimation, very poor for them to assign. In that it contains these exclusions for coverage. I don't think anybody in the modern age anticipates all the things that can happen with a general liability policy. But that's why you have an attorney review it. Well, no, you don't generally have attorneys review liability policies, and you don't really have a lot of flexibility in the market. I mean, there's not a lot of companies that are going to go out and insure. Markell is one. The Christian Brothers is another. I can't think of too many others that are actually engaged in that marketplace. Now, we're getting outside the record, and I don't want to do that, but you really don't have a lot of negotiating strength when you're buying liability insurance. And the same goes for you when you buy your auto insurance or your homeowner's insurance. It's not something that you have. Other states call it a contract of adhesion. Illinois has not done that. But you're in the business of dealing with children, so you'd think that you'd read the policy carefully and see what options are available for endorsement perhaps. And I have read the policy carefully, and I think that clearly there's nobody asking for coverage for the person who actually committed the acts that the girls allege to have committed. Joseph Hannon, nobody's asking for coverage for him. He's in jail in Sycamore, as far as I know. The only thing that we're asking for is for coverage for his employers. Markell says he's not an insured. We agree. They have a whole count of their declaratory judgment complaint that says Joseph Hannon is not an insured. We agree with that. And because he's not an insured, when we get to the language of the exclusion, which says the actual or threatened sexual abuse or sexual molestation by anyone of any person in the care, custody, or control of any insured at the time they were molested, he's not, the girls are not in the care, custody, and control of anyone else but Joseph Hannon. Otherwise, this doesn't happen, and we're not here. Those girls are not injured. Well, you should say actually both Hannon and Hannon are controlling this individual. Well, there's certainly an argument to be made that they are in the care, custody, and control of both Energem and its instructor because just like when you go to school, you're in the care, custody, and control of the teacher, and to an extent, you're in the care, custody, and control of the school district or the school administration. But this language excludes both. Anyone Hannon is excluded? If. And the insured Energem is? If you read the way Markell argues it as if this were the only exclusion in the policy. But right next door, the next page in the policy says, it is agreed that this policy does not provide coverage for any claims or suits seeking damages, including defense of same, for any person who actively participates in the act of sexual molestation or physical or mental abuse of any person. And the second paragraph says, however, notwithstanding the foregoing, the insured shall be protected under the terms of this policy as to any claim and or allegation which may be covered by the policy upon which suit may be brought against him. And that basically applies to somebody who walks in and was not an employee and does work on the premises and is injured by Hannon. And they would be covered. That would be one instance, yes. But it also says that the active, whoever is the active participant in abuse is not covered. And that's fine. We agree with that. That's certainly, nobody's asking for that. But what they say is the insured shall be covered. Well, the insured here, does it mean the same thing as the insured in the next page? It either, it can't mean the same thing. Or if it does, if it does mean the same thing, then on the next page the word insured does not mean Hannon, and it does mean Energem and Morreale. I mean, you have to reconcile these two together. And when you reconcile the two of them together, you have at least a duty to defend. I'm not saying that at the end of the day, after the record is established and whatever the facts may be developed and the underlying case is done, that you're not going to have another argument to be made by the insurance company, because I don't know that, because I don't know what the underlying facts are going to be. I'm only dealing with the complaints that were tendered for defense. And that's another point that I wish to bring up very quickly, is because in a duty to defend situation, duty to defend is a much lower threshold than indemnification. Now, if you don't have a duty to defend, there is no duty to indemnify, granted. But the fact that there may be a duty to defend does not automatically mean that there is a duty to indemnify, and that question is going to be reserved for a later time, at a later date after the record is developed and the underlying cases. What I'm suggesting to the Court is when people skip ahead and call this a coverage case, they're making a mistake, because it's not about coverage at this point. It's merely about whether or not there exists a duty to defend. Coverage is too broad. We're not saying that there's coverage here. We're saying there's merely a duty to defend, that Markell had a duty to come in and defend against insurers, not the person who's not insured, though we all agree he's not insured, but the persons who are insured, Morreale and Energem. And that's the, you know, a fundamental point. I was much smarter when I wrote the brief, and I want to ask the Court to consider everything I put in there. But I'm going to subside for the moment, because I think I'm running over my time, and I want to come back for a little bit longer. Thank you, Your Honor. Good morning again, Your Honors. Good afternoon. Again, Matt Sorum on behalf of Markell Insurance Company, or MIC. Your Honors, in this case, Energem is seeking to avoid the limitations of the insurance policies that are purchased. It's asking this Court to find that it's covered for sexual abuse claims for which it did not purchase coverage and for which it certainly didn't pay premium. MIC is asking this Court simply to enforce the policies as they were negotiated, pursuant to the plain meaning of their terms. And that's where I'd like to start, where Mr. Lahane left off, with the terms of the policies themselves, and in particular, the language of the youth-related abuse exclusion that's at the heart of the case. Energem asserts that, first, the exclusion can't apply because the children whose families brought these underlying suits were not in the care, custody, or control of an insured, as they would have to have been for the exclusion to apply. And specifically, Energem says that, well, it would be necessary for Joseph Hannon to have had the opportunity to abuse these children for them to have been in his care, custody, or control. Now, Energem cites no authority for that proposition, and respectfully, I think common sense tells us that that's simply not true. Acts of sexual abuse can occur anywhere, anytime. There doesn't have to be the exercise of care, custody, or control over a victim for Joseph Hannon to, for example, have touched them inappropriately. But beyond that, even if these children were in his care, custody, or control, it doesn't necessarily follow that they couldn't also have been in Energem's, which MIC contends was the case here. And why is that? It's because each of these plaintiffs claims that their child was on Energem's premises, participating in Energem's programming classes, and supervised by Energem's staff when this abuse happened. Now, if those circumstances aren't going to meet the care, custody, or control requirement of this exclusion, then that requirement's never reasonably going to ever be satisfied with respect to an insured like this. And the exclusion specifically says in its last paragraph, it's written for risks involved with the recreational, physical, or educational care and development of children, including organizations like youth and recreation facilities and gymnastics clubs and studios, risks like Energem faces, risks for companies that have children at their facilities for these types of activities. With respect to that type of insured, care, custody, or control clearly refers to these types of claims. Energem would have this court hold that if the youth-related abuse exclusion is applied here, that somehow results in a conflict and, therefore, an ambiguity with the other exclusion in the policy that pertains to sexual abuse, which is the, what we referred to as the general abuse exclusion. He says they're in conflict. He does, and specifically the reason that that is, is in the briefing, at least, would render illusory coverage provided in that second paragraph of the general abuse exclusion. And that's where the argument goes wrong. It's black-letter law, black-letter insurance coverage law in Illinois, that an exception to an exclusion does not create coverage. It merely preserves coverage that's provided elsewhere in the policy. That's exactly what the general abuse exclusion does here, particularly when read as we must in the context of the entire policy. The policy's general liability coverage form starts with an insuring agreement. Paragraph 1 explains what we cover. SPA would immediately enter that by paragraph 2, exclusions. It starts that this exclusion does not apply to, that it enumerates specific risks and losses and types of claims that are not covered. It carves those out of the coverage grant. That section, the list of exclusions, is the section into which this general abuse exclusion is added. It's telling us what the policy does not cover. And I'm paraphrasing here. The exclusion says we're not going to cover any type of abuse claim with respect to someone who actively participates in it, whether it's sexual molestation, physical abuse, or mental abuse. It goes on then to qualify or limit the application of the exclusion by saying, however, notwithstanding that exclusionary language, the insured shall be protected, and this is critical, under the terms of the policy as to any claim and or allegation which may be covered by the policy until an adjudication against the insured based on that alleged abuse. So that paragraph is not granting coverage. It's qualifying or limiting the application of the exclusion, and it's only preserving coverage to the extent it's otherwise provided under the policy, which is what it says. Critically, the youth-related abuse exclusion doesn't negate any of that. Anagin asserts that the two exclusions apply to the exact same sets of claims, the same subject matter, which is simply not the case. The youth-related abuse exclusion applies to a narrower, more focused subset of the types of claims that are covered by the general exclusion. For human together, the policy says we'll insure you against bodily injury caused by accidents. We're not, under the general abuse exclusion, going to insure you against any type of abuse claim, provided there is an adjudication that the insured is liable based on that abuse. But with respect to a narrower subset of abuse claims, that is claims involving sexual abuse of someone in the care, custody, or control of the insured, there will be no coverage at all, no qualifications, no exceptions, period. And that's how the exclusions are harmonized. If these claims only fell within the scope of the general abuse exclusion, it would control. But they fall within the narrower subset of claims to which the more specific youth-related exclusion applies. Let me ask you on a different topic. He spoke of alcohol, and that countermanaged the fact that there should have been some sort of more definitive letter at a certain time. And I'm saying that even though I know what Pope says, and obviously you didn't have Pope either, but I'm asking you to respond to his argument. So Elko speaks to the fact that Energem is now attempting to fit its argument about the impact of that January 20, 2017, letter into the rubric of Illinois' Estoppel Doctrine. And Elko tells us that under that doctrine, if an insurer is doubtful about its duty to defend or disputes its duty to defend, it has two options. It can defend subject to a reservation of rights, or it can file a coverage suit seeking a judicial determination of its rights and obligations under the policy. If it does neither and then is found to have breached its duty to defend, it will be estopped from asserting coverage defenses by virtue of what is deemed to be its repudiation of the policy. The Estoppel Doctrine set out in Elko doesn't apply here for several reasons. First of all, the January 20 letter was not a breach of the duty to defend. That letter was sent before any of the underlying suits had been tendered to MIC. It was sent before there was a duty to defend. As there was no duty at the time, that duty could not have been breached. Now, Energin tries to argue its way around that by making this anticipatory repudiation argument. It says that that's tantamount to a breach of the duty to defend, which, as far as I know, the courts had not spoken to, although it sounds like they have in the Pope case that Your Honor referred to. But even if anticipatory repudiation could support an Estoppel finding, this letter was not an anticipatory repudiation. As the Court has noted, to have anticipatory repudiation, you need a definite unequivocal statement that the party does not intend to comply or fulfill its obligations under the contract. That's not what the January 20 letter did. It said that based on the information that had been given to MIC, it did not believe that it had any obligations under the contract, which is different from saying we recognize our obligations and don't intend to comply. That's repudiation. Further, that statement about intent not to comply needs to be, as I said, definite and unequivocal, which this certainly was not. The letter says that right now all we know is Hannon was arrested. There are no claims. There's no lawsuit. But if there are claims, they're not going to be covered. They're going to be excluded because they necessarily arise out of sexual abuse. But then it says in the event there are claims or in the event there is a lawsuit, send it to us. We'll evaluate the lawsuit and the specific allegations for coverage under the policy. So there's no unequivocal repudiation here. Furthermore, even if we set all that aside, there can't be a stopple here because what ELCO says is that if there is a breach of the duty to defend, you avoid a stopple by filing a timely declaratory judgment action, which Energem concedes that we did here. So stopple doesn't fit with the facts of this case. I'd like to take a brief moment to also address the other sort of extra contractual argument that Energem makes, which is its public policy arguments. Very good. In that case, unless the Court has further questions, I'm happy to yield the rest of my time. Thank you. Thank you. Well, I won't start off with the public policy argument, but let me give you the... That's when you've given up on everything else. Yeah. No, and I think really the only thing I'd say about it is that I think the trial court may have gotten enamored of that argument and looked at that, and that's how we got matters taken out of order, if you will, the order of operations. Where the proper focus should have been on that January 20, 2017 letter, we skipped right to the public policy thing because that's kind of a big picture thing, and I don't think that's where we needed to go. But let me address one thing that counsel talked about, the exception to the exclusion situation. Counsel's right in terms of a general principle of law that an exception to an exclusion doesn't create new coverage. It really preserves what coverage is already provided, and it makes certain that there's a cutoff, if you will, to what the effect of the exception or the exclusion. But then ask yourself, what's left under Markell's interpretation of this? What extent is it otherwise provided for in that second exclusion? What's left of any coverage whatsoever? And that's why he says, well, he says that there's some coverage that's provided except for the actual threat of sexual abuse or sexual molestation by anyone, and of any person in the care custody control of any insured or insured employee or anybody else. He's basically said there's nothing left for this exception to the exclusion to apply to. He's read it out of the policy, and that's where he goes astray. The policy cannot impose one general and one specific, but that does not make it general or specific. They both have to be read together, and I've said that already, so I won't say it again. But the other thing I wanted to finish up with is perhaps the other basis on which the trial court may have gone astray. And, again, we're talking Danoble review, and I know the court will apply Danoble review and evaluate this case independently. But I think it's important for this court to note that where we have declaratory judgment action, they found a declaratory judgment action only after they've been challenged on their breach of policy. And they automatically go, they ran to the courthouse immediately and filed a declaratory judgment. That's closing the barn door after the horse is out galloping three fields away. You can't un-ring a bell. You can't un-breach a contract. And you cannot take advantage of your contract once you have first breached it. And that's just a general rule of contract law that has nothing to do with insurance, the Goldstein case. It's just basic hornbook contract law. So that's where the court, I think, has had a problem in the court below. They filed a declaratory, like I said, after the horse had gotten out of the barn. But we filed a counterclaim addressing the specific policy provisions that Markell chose not to advise the court of. And the court below dismissed our counterclaim as redundant. A marriage. Yeah. And, of course, it's not redundant because, yes, it is seeking declaratory relief. I'm asking that a duty to defend be found, and he's asking that there be no coverage. So what's the difference? But the difference is the route by which you get to that destination. The route in insurance coverage makes all the difference. Markell's complaint didn't even advise of the second exclusion that it tries to pass off as general here. It only focused on the youth-related exclusions, youth-related organizations exclusion to the complete ignoring the other exclusion. And we started with our counterclaim by pointing out to the court there are two exclusions. They must be read in harmony and the way to read them in harmony, and we set that all off for the court. So the court was – that's an important point for, you know, for this court to address in terms of pleading because it's not a mirror image to show the court and chancery that there is a very different route to be addressed here in terms of the coverage that's at issue in the case. But you left it for us. You laid it out for us. I did, and I laid it out for the trial court as well. So with that, Your Honors, I have – I asked the court to keep the public policy in mind only as a matter of, as Justice O'Brien used to say, which way the equities point. And I think in this situation, the equities point in favor of coverage. And I think Markell has given us in this case, perhaps by the inadvertent insertion of two exclusions where only one might have been desired or thought about, has given us a roadmap by which to find a duty to defend Morreale and Energem in this case. Thank you. Thank you both. You both made your points and made several points that weren't even in the briefs that we officiated. And I thank you for your time. And as I said, they were well-written briefs. I had to read the blank blank thing quite a few times.